ANDRE PATRICK EDWARDS,

      Plaintiff,

v.                                  Case No. 6:11-cv-1630-Orl-36DAB

BRANDY CORNELIUS, et al.,

      Defendants.

_____/

## ORDER

This case is before the Court on Defendant Aramark Correctional Services, LLC's ("Aramark's") Motion to Dismiss or Alternatively, for Summary Judgment (Doc. 23, filed February 6, 2012) and Andre Patrick Edwards' ("Plaintiff's") Response to Defendant's Motion to Dismiss or Alternatively for Summary Judgment (Doc. 27, filed March 8, 2012). After reviewing the pleadings submitted by both parties in support of their positions, the Court finds that Plaintiff has failed to state a claim against Aramark. Aramark's motion to dismiss is granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

In addition, because the complaint fails to state any cognizable claims against the remaining defendants, Plaintiff will be required to amend his complaint. 28 U.S.C. § 1915 (e)(2)(B)(ii).

## I.   Claims

Plaintiff, a prisoner in the State of Florida, filed this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), alleging claims against five defendants ("Defendants"): Jail Commander Susan Jeter, Jail Lieutenant Ronald Tomlin, Supervisor Brandy Cornelius, Supervisor Gregory Robertson, and Aramark Correctional Services, LLC (Doc. 1 at 1, 6-7).

Each of Plaintiff's claims stems from his dissatisfaction with his diet while a pre-trial detainee at the Brevard County Jail Complex. In particular, Plaintiff claims that he requires

a vegan diet because of his Rastafarian beliefs and because of certain undocumented food allergies. Plaintiff alleges that, despite special diet instructions to the kitchen and to Aramark, he received unacceptable food which caused him "rashes, bumps, headaches, lack of nutrition, [and] religious issues." (Doc. 1 at 8). Plaintiff alleges that his attempts to resolve the issue through the jail's grievance procedure were unsatisfactory with either negative responses, or with the defendants' attempt to shift the responsibility "from one employee to another." (Doc. 1 at 9). Plaintiff attaches numerous documents in support of his complaint (Doc. 1-1).[1]

Plaintiff claims that his rights have been violated under: (1) the Free Exercise Clause and the Establishment Clause of the First Amendment of the United States Constitution; (2) the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (3) the Fourteenth Amendment; and (4) the Eighth Amendment's prohibition against cruel and unusual punishment (Doc. 1 at 8). Plaintiff seeks an order from this Court to the Brevard County Jail Complex that he be provided an appropriate Rastafarian diet and monetary damages of $150,000 (Doc. 1 at 10).

## II. Factual Background

The facts of this case, as derived from the numerous attachments to the complaint and taken in the light most favorable to Plaintiff, are as follows: On May 21, 2010, without specifying his reasons for doing so, Plaintiff requested a vegan diet from the Brevard County Jail Complex (Doc. 1-1 at 1). He was told that only a chaplain can grant a vegan diet and only when there is a verified religious affiliation that requires it (Doc. 1-1 at 1).

---

[1] Attachments to a complaint constitute "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c) (2012). Furthermore, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Therefore, this Court may properly rely on the exhibits attached to Plaintiff's complaint and dismissal is appropriate if the exhibits negate Plaintiff's claims. *Thompson v. Illinois Dept. Of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *accord Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

Plaintiff filed a grievance on June 2, 2010 in which he complained that a doctor had told him that he would get a special diet but he had not yet received one (Doc. 1-1 at 12).

Plaintiff filed two grievances on June 17, 2010 in which he stated that he was Rastafarian and that he could not eat meat or drink dairy products and complained about hunger and health issues (Doc. 1-1 at 17, 13). On June 18, 2010, Plaintiff was told that his request for a vegetarian diet must go through the chaplain's office, but that his health concerns had been reported to the health care providers so that they could monitor him and check his weight (Doc. 1-1 at 13). On June 22, 2010, the chaplain approved a vegan diet for Plaintiff (Doc. 1-1 at 17).

On July 6, 2010, Plaintiff filed a grievance alleging allergies to carrots, string beans, and peanuts and complaining that he was receiving food contaminated with these items (Doc. 1-1 at 18,19). Plaintiff was informed that his records indicated only that he was lactose intolerant. It was suggested that Plaintiff put in a medical request (Doc. 1-1 at 18,19).

On July 17, 2010, Plaintiff complained to the Brevard County Sheriff's Office that he had sent notices to the kitchen that he could not eat dairy products and that he had allergic reactions to carrots and string beans (Doc 1-1 at 29). Plaintiff was informed that a doctor's verification of a food allergy was necessary before the vegan menu could be changed (Doc. 1-1 at 29).

On July 31, 2010 and August 13, 2010, Plaintiff complained about skin problems and food allergies (Doc. 1-1 at 5, 6).

On August 18, 2010, Plaintiff was informed by the Brevard County Sheriff's Office, in response to another complaint, that the facility had strict guidelines regarding special diets but did not have a specific Rastafarian diet (Doc. 1-1 at 25). On August 16, 2010, Plaintiff complained that he had no medical records of his allergy because, were he not in jail, he would not have eaten the items causing his problems, and as such, he had no

reason to see a doctor to confirm the allergies (Doc 1-1 at 14). He was advised by the medical department to avoid eating the problem-causing foods (Doc. 1-1 at 14).

On August 25, 2010, Plaintiff complained that a boiled egg had been included in his breakfast. He was informed that boiled eggs were a replacement for meat products (Doc. 1-1 at 15). On September 5, 2010 and September 6, 2010, Plaintiff complained that he was still receiving unacceptable items on his tray and that he was hungry. He alleged that medical was supposed to have sent his diet to the kitchen. In response, Plaintiff was informed that medical had no records of allergies and that medical did not prescribe vegetarian diets (Doc. 1-1 at 20, 16).

Between December 8, 2010 and March 27, 2011, Plaintiff filed four "sick call requests" complaining of stomachaches, headaches, and facial bumps (Doc. 1-1 at 7, 8, 10, 9, 11, 2).

On February 20, 2011, Plaintiff complained to the Brevard County Sheriff's Office that he received only beans and peanut butter for dinner. In response, it was noted that beans and cheese were meat replacements and that everything else on the tray was the same as the regular tray (Doc. 1-1 at 22).

On February 21, 2011, Plaintiff told the Brevard County Sheriff's Office that he was Rastafarian, but that he was getting meals contaminated with food he does not eat. He was told that he was provided a vegan diet by the kitchen (Doc. 1-1 at 21). On March 7, 2011, Plaintiff complained to the Brevard County Sheriff's Office of cake crumbs, to which he is allergic, contaminating his food. He was told that allergies must be approved by medical (Doc. 1-1 at 23).

On March 17, 2011, Plaintiff complained to the Brevard County Sheriff's office that he was not receiving a proper vegan diet. In response, it was noted that the kitchen "was under a transitioning period" and that his diet had been resumed (Doc. 1-1 at 24).

On March 31, 2011, Plaintiff sent a grievance to the Brevard County Sheriff's Office complaining of the jails's failure to provide a specific Rastafarian diet and noting that, although the jail maintained that he would receive a "vegan" diet, the jail misunderstood the word since a true vegan diet contained no animal products. He also complained that he wanted a referral to a health care provider in order to validate his allergy. Plaintiff also claimed in the grievance that his constitutional rights had been violated. In response, it was noted that Plaintiff had seen a health care provider, and the grievance was closed (Doc. 1-1 at 26-29).

The instant complaint was filed on October 27, 2011.

### III. Legal Standards

#### a. Standards for Motions to Dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89 (2007); *see also Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain a short and plain statement demonstrating an entitlement to relief, and the statement must "give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2507 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (citations omitted).

Previously, the standard for a motion to dismiss provided that a complaint should not be dismissed for failure to state a claim unless it appeared beyond doubt that the plaintiff could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, this standard has been retired in favor of a heightened requirement that the plaintiff supply "enough facts to state a claim for relief that is plausible on its face, rather than merely conceivable." *Huggins v. Marriott Ownership Resorts, Inc.*,

2008 WL 552590 at *2 (M.D. Fla. Feb. 27, 2008) (discussing *Twombly* in dismissing claims for breach of implied duty of good faith and fair dealing) (internal citations omitted).  Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 545 (citations omitted).  Factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Id.* at 545.  However, in the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

### b.    Conversion to Motion for Summary Judgment

Aramark has submitted an affidavit outside the scope of the Complaint alleging that the other defendants in this action were not employees of Aramark as alleged by Plaintiff (Doc. 23-1).  In its response to the motion to dismiss, Plaintiff has submitted an affidavit from another Rastafarian prisoner indicating that he too had been provided food inconsistent with a vegan diet (Doc. 27-1).  Under Rule 12(b), Fed. R. Civ. P., whenever a defendant files a motion to dismiss for failure to state a claim upon which relief can be granted, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Id.*  Thus, "[w]henever a judge considers matters outside the pleadings in a Rule 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion." *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002).  A court converting a Rule 12(b) motion into a Rule 56 motion in this fashion must give the parties notice of the contemplated conversion to allow them to supplement the record. *See Jones v. Automobile Ins. Co. of Hartford*, *Conn.*, 917 F.2d 1528, 1532 (11th Cir.1990); *Trustmark*,

299 F.3d at 1267 ("The district court is required to notify the parties that the motion has been converted, and give the parties 10 days in which to supplement the record.").

After careful review, the Court excludes the extraneous evidentiary submissions and declines to convert Aramark's motion to dismiss into a motion for summary judgment. Documents outside the pleadings will not be considered in the Court's analysis of Aramark's motion to dismiss.

### c. Standards for Liability Under § 1983 Based on Respondeat Superior

After reviewing Plaintiff's complaint and his response to Aramark's motion to dismiss, the Court has determined that Aramark was not directly involved with Plaintiff's diet orders and that he is attempting to hold Aramark liable under the theory of *respondeat superior.*[2] Supervisors cannot be held liable for the acts of employees in a § 1983 action solely on the basis of *respondeat superior* or on the basis of vicarious liability absent proof of actual personal involvement in the alleged wrong-doing. *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 691 (1978) (doctrine of respondeat superior is inapplicable to § 1983 actions); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir.1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability). Rather, in order to establish that a defendant committed a constitutional violation in his supervisory capacity, a plaintiff must show that the defendant instituted a "custom or policy [that] result[ed] in deliberate indifference to constitutional rights or . . . directed [his] subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007) (internal quotations and citation omitted).

---

[2]Aramark is a registered foreign limited liability company. *See Florida Department of State, Division of Corporations.* However, if state action is established, a private actor can be liable under § 1983. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 951-953 (1982).

Accordingly, to state a valid claim against Aramark under § 1983, Plaintiff must show that Aramark's corporate custom, policy, or practice was the "moving force" behind the alleged constitutional deprivation. *Hatten v. Prison Health Services*, 2006 WL 4792789 (M.D.Fla. Sept. 13,2006); *see also Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation.").

## IV.   Analysis

### a.   The First Amendment

The First Amendment, made applicable to the states through the Fourteenth Amendment, provides in pertinent part that Congress shall make no law prohibiting the free exercise of religion. U.S. Const. amend. I.  The standard used to analyze a claim raised under the Free Exercise Clause was enunciated in *Turner v. Safley*, 482 U.S. 78 (1987), *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), and their progeny.  The relevant inquiry is whether the prison regulation burdening a fundamental right is reasonably related to legitimate penological objectives of the corrections system, or whether it represents an exaggerated response to those concerns. *Turner*, 482 U.S. at 87, 89.  Courts have generally found that to deny inmates food that satisfies the dictates of their religion unconstitutionally burdens their right to free exercise of their faith.  *Harris v. Ostrout*, 65 F.3d 912, 918 n. 5 (11th Cir. 1995).  However, this right is not absolute--particularly when a prisoner's request for a dietary accommodation is based on his personal preference, rather than a religious tenet.

Although it is clear that Plaintiff wanted a vegan diet, it is equally clear from the exhibits attached to his complaint that his requests for dietary accommodation were not ignored.  Rather, within three days of Plaintiff's request for a vegan diet, he was instructed that he needed to allege a verified religious affiliation in order to receive a special diet (Doc

1-1 at 1).[3]  Three weeks later, for the first time, Plaintiff indicated that he did not consume

animal products because of religious reasons (Doc. 1-1 at 17).  Five days after notifying the

jail about his religious preference, his request for a vegan diet was approved by the jail's

chaplain (Doc. 1-1 at 17).  To the extent Plaintiff argues that this five day delay was

unreasonable, the documents attached to Plaintiff's complaint confirm that neither Aramark

nor any of the other defendants had authority to prescribe religious diets because only the

chaplain's office had authority to grant vegan diets (Doc. 1-1 at 1, 13).

Most of Plaintiff's additional grievances consist of Plaintiff's dissatisfaction with the

foods provided on his vegan diet.  In particular, Plaintiff alleges that he was allergic to many

of the foods provided, including animal products, dairy products, carrots, string beans,

peanuts, eggs, and cake (Doc. 1-1 at 13, 18, 19, 29, 5, 25, 14, 20, 16, 23, 24, and 27).[4]

Plaintiff also complained that the beans he received for dinner were often either "dried out

or just hard." (Doc. 1-1 at 22).  In one grievance, Plaintiff indicated that he would eat fish,

shrimp, soy pate, and tofu (Doc. 1-1 at 25).  However the inclusion of these foods does not

appear to be an absolute requirement of his religion, and it further appears that Plaintiff's

religious and dietary needs were being met through the vegan diet provided to him.

This is not a case where a prison policy infringed upon Plaintiff's First Amendment

rights, and Plaintiff's claim does not implicate the Free Exercise Clause.  Moreover, even

---

[3]It was appropriate for the Brevard County Jail Complex to require a sincerely held religious belief, in conjunction with his request for special religious dietary accommodations. *See DeHart v. Horn*, 227 F.3d 47, 52 (3d Cir. 2000) ("... if a prisoner's request for a particular diet is not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request . . . . It is in this way that prisons are protected from random requests for special diets by inmates whose alleged dietary restrictions are not the result of their religious convictions but rather their secular predilections").

[4]Plaintiff was repeatedly informed that his alleged food allergies needed to be verified by a doctor because his medical chart indicated only that he was lactose intolerant (Doc. 1-1 at 18, 19, 29, 14, 20, 16, 23).

if the meals served to Plaintiff did implicate Plaintiff's constitutional rights, the jail's legitimate interest in efficient meal preparation generally outweighs a prisoner's interest in a diet that suits his personal preferences. *O'Lone*, 482 U.S. at 351-352 (prison regulation restricting a prisoner's exercise of religion is valid if it is reasonably related to a legitimate penological interest); *see also DeHart v. Horn*, 390 F.3d 262, 271 (3d Cir. 2004) (prison's denial of Buddhist diet in which all pungent vegetables must be removed from plate reasonably related to prisons legitimate interest in efficient food provision); *Rapier v. Harris*, 172 F.3d 999, 1006 (7th Cir. 1999) (infrequent unavailability of a non-pork tray did not constitute more than a *de minimis* burden of plaintiff's free exercise of religion); *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007) (denial of kosher diet does not violate First Amendment where inmate had option of receiving vegetarian meals because prison officials had legitimate governmental interest in running simplified food service rather than a full-scale restaurant).

Finally, Plaintiff has not shown the requisite "causal connection" between Aramark's actions and any unconstitutional conduct such as to hold Aramark liable for the actions of its employees or subordinates. Plaintiff has not alleged facts to show that Aramark's corporate custom, policy, or practice were behind the alleged First Amendment violations. Accordingly, the Court finds that Plaintiff's First Amendment claims against Aramark are subject to dismissal under Fed. R. Civ. P. 12(b)(6).

### b. The Religious Land Use and Institutionalized Persons Act

Under section 3 of the Religious Land Use and Institutionalized Persons Act:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Section 3 of RLUIPA "affords to prison inmates a heightened protection from government-imposed burdens by requiring that the government

demonstrate that the substantial burden on the prisoner's religious exercise is justified by a compelling, rather than merely a legitimate, governmental interest." *Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007) (internal quotation marks and citation omitted), abrogated on other grounds by *Sossamon v. Texas*, 131 S.Ct. 1651 (2011). The statute defines "government" to include states, counties, municipalities, departments, agencies, their instrumentalities and officers, and persons acting under color of state law. 42 U.S.C. § 2000cc–5(4)(A).

To establish a prima facie case under § 3 of RLUIPA, a plaintiff must demonstrate: (1) that he engaged in a religious exercise; and (2) that the religious exercise was substantially burdened. *Smith*, 502 F.3d at 1276.; 42 U.S.C. § 2000cc-1(a). The Eleventh Circuit has defined a "substantial burden" as being "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Smith*, 502 F.3d at 1277 (quotation marks and citation omitted). To constitute a substantial burden under RLUIPA, the governmental action must significantly hamper one's religious practice. *Smith*, 502 F.3d at 1277.

If a plaintiff meets his burden of showing that the challenged government action substantially burdens the exercise of his religious beliefs, the government must then demonstrate that the imposition of the burden or refusal to accommodate a plaintiff's belief furthers a compelling government interest by the least restrictive means. 42 U.S.C. § 2000cc–1(a); 42 U.S.C. § 2000cc–2(b). "[I]f the plaintiff fails to present evidence to support a prima facie case under RLUIPA, the court need not inquire into whether the governmental interest at stake was compelling." *Smith*, 502 F.3d at 1276.

Plaintiff has not presented a prima facie case under RLUIPA. While the Court accepts as true, for purposes of a motion to dismiss, Plaintiff's assertion that he follows a vegan diet because of religious beliefs, he has not alleged facts which demonstrate that his religious exercise was substantially burdened by the jail's provision of his diet. As noted

above, Plaintiff's religious and dietary needs were being met through the vegan diet provided to him. To the extent Plaintiff argues that there were lapses in the jail's provision of his vegan diet (Doc. 1-1 at 24), it is clear from the attachments to Plaintiff's complaint that the jail consistently attempted to accommodate Plaintiff's diet. Essential to demonstrating a substantial burden, Plaintiff must show that Aramark engaged in some type of conduct the *purpose* of which was to coerce Plaintiff into conforming his behavior. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1225 (11th Cir. 2004). Simple confusion in the kitchen or the provision of undesirable food such as dried beans does not rise to the level of conduct which can be characterized as creating a substantial burden on Plaintiff's ability to practice Rastafarianism. Aramark's motion to dismiss is granted on Plaintiff's claims for violation of RIULPA.

### c.     Fourteenth Amendment – Equal Protection

The Constitution requires that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause prevents "governmental decision makers from treating differently persons who are in all relevant respects alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920), *cited in Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Lofton v. Secretary of Dept. of Children and Family Services*, 377 F.3d 1275, 1277 (11th Cir. 2004). To establish an equal protection claim, a prisoner must demonstrate that: (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Sweet v. Secretary, Dept. of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir.2006). Plaintiff has not alleged that any other similarly situated inmates were treated differently than he was. Accordingly, Aramark's motion to dismiss is granted on Plaintiff's equal protection claim.

### d. Eight Amendment - Cruel and Unusual Punishment [5]

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Prison conditions are subject to "scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment prohibits deliberate indifference to prison conditions that deprive an inmate of essential human needs such as food, clothing, shelter, medical care, and reasonable safety. *Helling v. McKinney*, 509 U.S. 25, 31-32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). .

To establish an Eighth Amendment prison-conditions claim, the plaintiff must show: (1) prison conditions that are objectively, "sufficiently serious"; and (2) deliberate indifference by the defendant prison official. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (stating that negligence does not suffice to satisfy this standard). A prison official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The conditions alleged must be extreme, resulting in a denial of "the minimal civilized measure of life's necessities" and posing an excessive or substantial risk of serious harm. *Id.* at 834. Specifically with regard to food, even if the food provided to a prisoner is unpleasant, it is not necessarily an Eighth Amendment violation because the Constitution requires only that prisoners be provided with reasonably adequate food of sufficient nutritional value to preserve health. *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *LeMaire v. Maass*, 12 F.3d 1444,

---

[5] The Eighth Amendment applies to convicted inmates, not pretrial detainees. A pretrial detainee's "constitutional rights arise not from the Eighth Amendment, but from the Due Process Clause of the Fourteenth Amendment." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 n. 4 (11th Cir. 1995). Whether or not the Court treats Plaintiff as a pretrial detainee or a convicted prisoner makes no difference, however, because "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." *Marsh v. Butler County*, 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001). This analysis therefore refers only to the Eighth Amendment. *See, e.g., Purcell v. Toombs County*, 400 F.3d 1313, 1318, n. 13 (11th Cir. 2005).

(9th Cir. 1993) (food served by a jail need not be tasty, aesthetically pleasing, or hot, but merely needs to maintain adequate health).

Although Plaintiff complains of unspecified allergies, and refers to "medical's special diet instructions to the kitchen" (Doc. 1 at 8), the records attached to Plaintiff's complaint indicate that Plaintiff has no verified food allergies – only lactose intolerance (Doc. 16, 18, 23, 29).[6]  Plaintiff's vegan diet was authorized by the chaplain for religious, not medical, reasons.  It was explained to Plaintiff that the kitchen was not allowed to change a vegan diet menu without a doctor's pass verifying that Plaintiff was allergic to the items he complained of (Doc. 1-1 at 29).  Because there was no verification of Plaintiff's alleged food allergies, the prison officials could not have "known of, and disregarded" an excessive risk to Plaintiff's health regarding the alleged allergies.  At most, the occasional errors complained of were negligence, which is not cognizable under 42 U.S.C. § 1983. *Chandler*, 379 F.3d at 1289.  No Eight Amendment violation occurred.  Moreover, Plaintiff has not shown the requisite "causal connection" between Aramark's actions and any unconstitutional conduct such as to hold Aramark liable for the actions of its employees or subordinates, nor has he shown any corporate custom, policy, or practice behind the alleged constitutional deprivation.  Accordingly, Aramark's motion to dismiss is granted on Plaintiff's Eighth Amendment claim.

### e.    *Order to Amend*

After thoroughly reviewing this case, it is clear that Plaintiff has failed to state a claim against any defendant. 28 U.S.C. § 1915(e)(2)(B)(ii). Pleadings submitted by a *pro se* plaintiff "are held to a less stringent standard than pleadings drafted by attorneys" and are therefore, liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  As such, Plaintiff will be given an opportunity to amend his complaint to state

---

[6] Plaintiff claims that he has no medical records to verify his allergies because he knew which foods to avoid and would not consume those foods were he not in prison (Doc. 1-1 at 14).

14

a claim against the remaining defendants. The amended complaint should not contain claims against Aramark. Moreover, if Plaintiff is no longer incarcerated at the Brevard County Jail Complex, all claims for injunctive relief should be removed from the complaint. An inmate's transfer from an institution or release from custody renders moot claims for injunctive or declaratory relief. *See Spears v. Thigpen*, 846 F.2d 1327 (11th Cir. 1988); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985).

To amend his complaint, Plaintiff should completely fill out a new civil rights complaint form, marking it **Amended Complaint**. The amended complaint must include all of Plaintiff's claims in this action; it should not refer back to the original complaint. Plaintiff is warned that the filing of an amended complaint replaces all previous complaints, and claims that are not re-alleged are deemed abandoned. *See In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005).

## V. <u>Conclusion</u>

Because no relief could be granted against Aramark under any set of facts that could be proved consistent with the allegations made by Plaintiff in his complaint, Plaintiff's claims against Aramark must be dismissed for failure to state a claim pursuant to Federal Rule of Criminal Procedure 12(b)(6).

Because Plaintiff's complaints against the remaining defendants are also deficient, Plaintiff must amend his complaint. ***If plaintiff fails to timely file an amended complaint, or if the complaint fails to comply with the Federal Rules of Civil Procedure or with this Order, the Court will dismiss the complaint pursuant to Rule 41(b).***

After completing the new civil rights complaint form, Plaintiff should mail it to the Court with a copy for each defendant.

**IT IS ORDERED** and **ADJUDGED** that:

1. Defendant Aramark Correctional Services, LLC's Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 23, filed February 6, 2012) is **GRANTED.** The claims against Defendant Aramark Correctional Services, LLC are **DISMISSED.** The Clerk of the Court shall enter judgment accordingly.

2. Plaintiff shall amend his complaint as described above within **TWENTY-ONE (21) DAYS** from the date of this Order. **Plaintiff is advised that failure to fully comply with this Order will result in the dismissal of this action without further notice.**

**DONE AND ORDERED** at Orlando, Florida, this 8th day of June, 2012.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-44/3
Andre Patrick Edwards